ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT
MAR 18 2016
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

JULIO C. MOLICA,
JULIO F. MOLICA,
NANCY AMPARO CUEVA
10351 Oklahoma Ave.
Chatsworth, CA 91311
Phone: (818) 590-0766
Fax: (818)576-8961

Plaintiffs
In Pro-Per

RECEIVED BUT NOT FILED
CLERK, U.S. DISTRICT COURT
MAR 18 2016
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JULIO C. MOLICA, an individual, JULIO F. MOLICA, an individual NANCY AMPARO CUEVA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SELECT PORTFOLIO SERVICING, INC, a business of unknown form,<br><br>Defendant. | Case No.: 2:15-cv-09759 GW-FFM<br><br>**FIRST AMENDED PLEADING TO COMPLAINT**<br><br>**1. BREACH OF CONTRACT**<br>**2. NEGLIGENCE**<br>**3. CONVERSION**<br>**4. CONTRUCTION TRUST**<br>**5. LOSS OF CONSORTIUM** |

COMES NOW, JULIO C. MOLICA, FRANCESCO F. MOLICA and NANCY AMPARO CUEVA in its Complaint for Breach of Contract, Negligence, Conversion, Constructive Trust and Loss of Consortium.

JULIO C. MOLICA,
JULIO F. MOLICA,
NANCY AMPARO CUEVA
10351 Oklahoma Ave.
Chatsworth, CA 91311
Phone: (818) 590-0766
Fax: (818)576-8961

Plaintiffs
In Pro-Per

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JULIO C. MOLICA, an individual, JULIO F. MOLICA, an individual NANCY AMPARO CUEVA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SELECT PORTFOLIO SERVICING, INC, a business of unknown form,<br><br>Defendant. | Case No.: 2:15-cv-09759 GW-FFM<br><br>Pleading to<br>**FIRST AMENDED COMPLAINT**<br><br>**1. BREACH OF CONTRACT**<br>**2. NEGLIGENCE**<br>**3. CONVERSION**<br>**4. CONTRUCTION TRUST**<br>**5. LOSS OF CONSORTIUM** |

COMES NOW, JULIO C. MOLICA, FRANCESCO F. MOLICA and NANCY AMPARO CUEVA in its Complaint for Breach of Contract, Negligence, Conversion, Constructive Trust and Loss of Consortium.

## I.

## JURISDICTION

1. This court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000.00.

## II.

## VENUE

2. Pursuant to 28 U.S.C § 1441(a), the United States District Court for the Central District of California – Western Division is the proper venue for this action because it is the judicial district and division in which the claims occurred and the Plaintiffs reside.

## III.

## PARTIES

3. Plaintiffs JULIO C. MOLICA ("JULIO C."), JULIO F. MOLICA ("JULIO F.") and NANCY AMPARO CUEVA ("CUEVA" also known collectively as "THE MOLICAS &CUEVA") are the habitants at the property located at 10351 Oklahoma Ave. Chatsworth, CA 91311 ("PROPERTY").

4. CUEVA is a habitant, the mortgagee of "SPS" loan number 0015387145, and the president of REAL STATE SHORT SALES, INC. ("RESS") title-owner of the "PROPERTY" subject of this litigation.

5. Defendant, SELECT PROTFOLIO SERVICING, INC., hereinafter "SPS", is a nationally recognized mortgage servicer specializing in the servicing of

residential mortgages. Founded in 1989, SPS headquartered in Salt Lake City, Utah.

## IV.

## GENERAL ALLEGATIONS AND FACTS

6. On March 9, 2015, RESS and CUEVA filed a lawsuit against SPS in California State Court. SPS eventually had the lawsuit removed to Federal Court; Cueva, et al., vs. Select Portfolio Servicing, Inc., et al. No. 2:15-cv-02555-GW-FFM ("LAWSUIT").

7. The lawsuit pertained to wrongful foreclosure proceedings initiated by SPS against the PROPERTY due to SPS's claim that RESS and CUEVA have failed to make the proper monthly mortgage payments.

8. RESS and CUEVA alleged that the monthly mortgage payments made are correct, therefore, SPS did not have the right to begin foreclose proceedings on the PROPERTY.

9. THE MOLICAS &CUEVA are the habitants of the PROPERTY.

10. While the lawsuit was navigating its way through Federal Court, on July 6, 2015, the PROPERTY was flooded causing extensive damage to several areas on the first floor.

11. Specifically the first floor foyer, hallway, living room, dining area, library, home-office and guest-bathroom next to the first floor office were flooded with over twelve inches of water.

12. Besides the necessary physical cleaning of the flooded areas, the

affected areas needed new paint, wallpaper, new baseboards, new drywall and new hardwood parquet flooring. The flood also damaged all the furniture and area rugs that were in the various affected areas.

13. Within the first week after the July 6th flood, a claim was made by CUEVA, the holder of the home owner insurance policy, with State Farm General Insurance Company ("STATE FARM"), the insurer of the PROPERTY.

14. STATE FARM confirmed coverage and assigned an inspector to visit the premises to establish a Summary of Structural Loss and others personal damage.

15. A report was made by State Inspector Paul Rice and the report was sent to CUEVA (Exhibit A).

16. On August 5, 2015, STATE FARM sent an initial payment of $24,547.25, CUEVA to start structural repairs to the premises. The payment was made to CUEVA and her mortgage entity SPS. Specifically the check was made out to "Nancy Amparo-Cueva & Select Portfolio Servicing Inc. its successors and or assigns". (Exhibit B).

17. In all, it was estimated that the cost of the repairs to the PROPERTY would be over $80,000.

18. After CUEVA received the August 5th 2015, check, she contacted SPS and spoke to a SPS representative who instructed CUEVA to mail the check to SPS so that SPS could endorse the check, and send it back to her. CUEVA, as instructed, CUEVA mailed the check on August 7, 2015. (Exhibit C)

19. CUEVA sent the check via US Express mail and attached a prepaid US Express Mail envelope for its return. CUEVA was able to confirm online that the August 5th check was received by SPS on August 11th. (Exhibit D)

20. On August 12th CUEVA called SPS and spoke to SPS representative Pamela Morris to inquire about the status of the check. Ms. Morris told CUEVA that SPS would not endorse the check first but would sent it back to CUEVA so that she could endorse the check and mail it back to SPS, allowing SPS to disburse payments to the contractors.

21. On August 14th, CUEVA spoke to STATE FARM adjuster Nickolas Albers who told CUEVA that a SPS representative had contacted him to verify the incident and its damages, Mr. Albers also told CUEVA that he confirmed the incident and damages to the SPS representative.

22. Another ten days past and CUEVA did not receive the August 5th check back from SPS. On August 24th CUEVA contacted SPS to find out the status of the outstanding check.

23. The SPS representative told CUEVA that SPS would not send back the check to her because she had a LAWSUIT pending in Federal Court against SPS. CUEVA pointed out to the representative that the LAWSUIT had nothing to do with the payment to repair flood damage that occurred on July 6th at the "PROPERTY".

24. The representative informed CUEVA that she had no authority to resolve the issue and that SPS was instructed by the attorneys representing SPS in

the LAWSUIT not to endorse the check nor send it for endorsement.

25. CUEVA was then transferred to a "resolution specialist", Ms. Jenn Hunter. CUEVA ask Ms. Hunter why SPS was holding up the payment for the repairs to the PROPERTY to which Ms. Hunter responded that under the homeowners policy contract SPS was entitle to keep the funds and, furthermore, the attorneys representing SPS in the LAWSUIT had advised them not to pay or release any funds-repairs to CUEVA.

26. Cueva pointed out to Ms. Hunter that the funds were designated for the repair of the property pertaining to the July 6th flood. CUEVA also explained to Ms. Hunter that CUEVA'S husband was ill with a serious leg injury and the condition of the PROPERTY, as a result of the flood, was exposing his leg to an infection.

27. Ms. Hunter simply responded that SPS would not endorse the check nor mail back the check for her endorsement. Additionally Ms. Hunter told CUEVA that if CUEVA wished to pursue the matter further with SPS, she would have to put her claim in writing.

28. CUEVA then mailed and faxed a letter to Ms. Hunter on August 27, 2015, as per Ms. Hunter's request, including 22 pages of Structural Report done by STATE FARM inspector Paul Rice. (Exhibit E)

29. Subsequent to the correspondence CUEVA sent to SPS, CUEVA never received the check back endorsed or for endorsement.

30. In the meantime the serious damage that the flood caused was not being

addressed at all; all the walls of the first floor bathroom were half open and, after few months, rodents were entering the premises.

31. On September 9, 2015, CUEVA'S husband MOLICA C. suffered a serious infection to his left leg and was admitted in the emergency room of West Hills Hospital with osteomyelitis (an infection to the bone due to exposed open wound). (Exhibit F)

32. On September 30, 2015, CUEVA called STATE FARM claim adjuster Daniel Woods, and explained to him her desperate situation. Mr. Wood told CUEVA, that he would discuss the case with an SPS representative.

33. On or about October 5, 2015, Mr. Woods sent an e-mail to CUEVA which told her that he had discussed the insurance claim with SPS representative Timothy Shepherd on October 5, 2015. The email also told CUEVA that Mr. Woods had issued a replacement check for the August 5th check on October 5th and that CUEVA should have already received a "claim package" from SPS regarding the flood (Exhibit G).

34. Lastly the email gave CUEVA instructions on how to proceed now that Mr. Wood had discussed the case with Mr. Shepard.

35. Several weeks past after CUEVA received the email from Mr. Wood and no endorse check or claim package was received by CUEVA.

36. On October 29, 2015, CUEVA, under the instructions of Mr. Wood, sent a letter to SPS representative Timothy Shepherd via US Mail and via fax to No.

(937)525-7699, along with a contract signed between CUEVA and Pacific Building Contractors, Inc. represented by Craig Grillo, including a copy of the payment she extended to Mr. Grillo (Exhibit H).

37. CUEVA informed Mr. Shepherd in the letter that due to her husband's medical condition and the approaching holiday season, CUEVA had no choice but to sign a contract with Pacific Building Contractors, Inc. ("PBC") and pay PBC herself so that repairs to the PROPERTY could begin immediately.

38. CUEVA then informed SPS that she expected SPS to endorse the October 5th check and send it back to her as reimbursement for the payment she made to PBC.

39. As of the date of the filing of this complaint, the Plaintiffs have not received any SPS endorsed checks which were issued by STATE FARM to both CUEVA and SPS.

40. The Plaintiffs did finally receive the claim package from SPS the last week of November 2015 with a cover letter dated November 24, 2015, more than four months after the claim package should have been sent.

41. The Plaintiffs continue to pay for the repairs for the PROPERTY out of their own pocket.

42. The main entrance of the PROPERTY is dangerously exposed because the electrical intercom and camera system of the main entrance was damaged by the flood. STATE FARM issued a payment to CUEVA and SPS for the immediate

repair, in the sum of $1,380.00 but, to date, said check has not been endorsed so that this urgent repair can take place.

43. CUEVA has received from STATE FARM four (4) separate checks payable to CUEVA & SPS as follows: 8/28/2015, $395.00, 11/11/2015, $1,380.00, 11/03/2015, (replacement) $24,547.25, 12/07/2015, $38,784.49.(Exhibit H).

44. Plaintiffs are requesting that SPS endorse the checks to the insured as reimbursement paid to contractors to start the repairs.

45. Plaintiffs alleged that they have been damaged in an amount that exceeds $100.000 when it is taken into consideration the funds that have been withheld by the Defendant along with expenses that the Plaintiffs have suffered in relation to the actions of the Defendant.

## V.

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT)

46. Plaintiffs re-allege and incorporate paragraph 1 through 45, as though if set forth fully herein.

47. Plaintiffs are required to have homeowners insurance to protect the interests of the lender, in this case SPS, should any damage befall the PROPERTY.

48. At the time of the July 6th flood, a valid homeowner's insurance policy was in place with STATE FARM, through policy holder CUEVA.

49. Once the PROPERTY was damaged, a claim was promptly made and

accepted by the STATE FARM.

50. Plaintiffs did everything required to insure the interests of the lender regarding the PROPERTY.

51. By refusing to endorse the checks issued by STATE FARM and denying the use of those funds to repair the PROPERTY, Defendant breached its obligation, as well as the covenant of good faith and fair dealing by allowing the PROPERTY to fall into further disrepair.

52. As a direct and proximate result of the breach of the Defendant as set forth above, Plaintiff s have suffered general and special damages in an amount to be determined at trial.

## VI.

## SECOND CAUSE OF ACTION

## (CONVERSION)

53. Plaintiffs re-allege and incorporate paragraph 1 through 52, as though if set forth fully herein.

54. Defendant willfully interfered with Plaintiffs' rights to the PROPERTY. Defendant willfully interfered through its refusal to endorse the checks issued by STATE FARM and denying the use of those funds to repair the PROPERTY.

55. Defendant's intentional acts enabled the PROPERTY to fall into disrepair in a manner inconsistent with the Plaintiffs' property rights.

56. As a direct and proximate result of the Defendant's actions as set forth above, the Plaintiffs have suffered general and special damages in an amount to be determined at trial.

**VII.**

**THIRD CAUSE OF ACTION**

**(NEGLIGENCE)**

57. Plaintiffs re-allege and incorporate paragraph 1 through 56, as though if set forth fully herein.

58. At all times relevant herein, the Defendant had a duty to exercise reasonable care and skill as it pertains to the PROPERTY.

59. In taking the actions alleged above, and in failing to endorse the checks issued by STATE FARM, the Defendants breached their duty of care and skill to Plaintiff

60. As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiffs suffered general and special damages in an amount to be determined at trial

**VIII.**

**FOURTH CAUSE OF ACTION**

**(CONSTRUCTIVE TRUST)**

61. Plaintiffs re-alleges and incorporate paragraph 1 through 59, as though if set forth fully herein.

62. By reason of the wrongful manner in which the defendant has denied the use of the funds issued by STATE FARM, Defendant has no legal or equitable right, claim or interest therein, but, instead, Defendant is an involuntary trustee holding said funds in constructive trust for Plaintiffs with the duty to convey the same to Plaintiffs forthwith.

## IX.

## FIFTH CAUSE OF ACTION

## (LOSS OF CONSORTIUM)

63. Plaintiffs re-alleges and incorporate paragraph 1 through 62, as though if set forth fully herein.

64. As a direct and proximate result of Defendant's negligent conduct, JULIO C. suffered and continues to suffer from a serious infection to his left leg.

65. The condition of the PROPERTY, due to Defendant's negligence, is so adverse to JULIO C.'s physical condition that he has been ordered by his doctor not to return to the PROPERTY until repairs are made so that the PROPERTY is in the same condition that it was before the July 6, 2015 flood.

66. Before suffering the infection, JULIO C. was able to and did perform the duties of a husband and did perform all these duties, including assisting in maintaining the home, and providing love, companionship, affection, society, moral support, and solace to CUEVA.

67. As a direct and proximate result of leg infection and the fact that

JULIO C. is no longer allowed to live at the PROPERTY, he has been unable to perform the duties of a husband and provide CUEVA with love, companionship, affection, society, moral support and solace.

68. As a result both JULIO C. and CUEVA have been and continue to be damaged in a total amount to be established by proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

1. For general damages according to proof at trial;
2. For attorney fees as provided for in the applicable contracts;
3. For costs of suit incurred herein;
4. For special damages according to proof at trial;
5. For exemplary and punitive damages;
6. For a declaration that Defendant holds the funds issued by STATE FARM as constructive trustees for the benefit of the Plaintiff;
7. For such other and further relief as the Court deems just and proper.

//

//

//

//

**DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand a Jury Trial on all issues raised in this complaint.

Dated: Respectfully Submitted:

By: ______________________________

JULIO C. MOLICA/Plaintiff in Pro-Per

Dated: Respectfully Submitted:

By: ______________________________

JULIO F. MOLICA/Plaintiff in Pro-Per

Dated: Respectfully Submitted:

By: ______________________________

NANCY AMPARO CUEVA/Plaintiff in Pro-Per

# PROOF OF SERVICE

I, FRANCISCO BACINO,

With a business address 20555 Devonshire St. #524, Chatsworth, CA 91311.

State as follows, that on March 18, 2016, I mailed via-mailed and regular US MAIL to:

Allison Chua, Esq.
McGlinchey Stafford
18201 Von Karman Ave. #350
Irvine, CA 92612
achua@mcglinchey.com

Amanda Velasquez, Esq.
11856 Balboa Blvd. #297
Granada Hills, CA 91344
Amanda@popelegal.org

The Following documents:

FIRST AMENDED COMPLAINT

1. BREACH OF CONTRACT,
2. NEGLIGENCE,
3. CONVERSION.
4. CONSTRUCTION TRUST,
5. LOSS OF CONSORTIUM,

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

3/18/2016

By: ______________________
Francisco Bacino